**Praman CHIRAVACHARADHIKUL a.k.a. Praman Chiravacharadhijul, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA- TION SERVICE, Respondent.**

**No. 80–1479.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1981.

Decided April 3, 1981.

Rehearing and Rehearing En Banc May 1, 1981.

Frank J. Ceresi, Arlington, Va., for petitioner.

Daniel E. Fromstein, Criminal Division, Dept. of Justice, Washington, D. C. (James P. Morris, Gen. Litigation and Legal Advice Section, Criminal Division, Washington, D. C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WIDENER, Circuit Judge.

ALBERT V. BRYAN, Senior Circuit Judge:

Praman Chiravacharadhikul seeks review of the Board of Immigration Appeals' (BIA) order denying him eligibility for the discretionary relief from deportation permitted under § 212(c) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1182(c).[1] To qualify for such relief, an

---

1. 8 U.S.C. § 1182(c):
   Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section.
   This statute is a codification of § 212(c) of the Act. Although its language refers to the exclusion of an alien, § 212(c) also applies to circumstances of deportation. *Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979); *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).

alien must have acquired a "lawful unrelinquished domicile of seven consecutive years." Although Praman had lived continuously in this country for more than the required seven years, the Immigration and Naturalization Service (INS) denied him invocation of the provisions of § 212(c) because he had not accumulated the seven-year statutory period of stay *after* the procurement of his permanent resident status in 1977. He petitioned this court for review of the decision in July 1980. 8 U.S.C. § 1105a. We affirm and accordingly deny petitioner's claim for exoneration from deportation.

Praman, a native of Thailand, came to the United States on December 4, 1968 under a student visa (an F–1). 8 U.S.C. § 1101(a)(15)(F)(i). On March 27, 1970 he obtained a job as a chauffeur for the Ambassador of Thailand and he received a change of status under the Act from student to non-immigrant employee of a foreign government (an A–2). 8 U.S.C. § 1101(a)(15)(A)(ii). He was married and the couple had a child born in Washington, D. C. on June 4, 1971, but he was separated from his wife at the time of the initial hearing on his petition. Praman applied for permanent residency in 1973. Upon returning from a visit to Thailand in 1975, he entered the country as a non-immigrant employee. Subsequently, Praman traveled to San Salvador and there obtained a non-preference visa. Upon re-entry to the United States on February 28, 1977 he was admitted as a permanent resident.

On March 21, 1978 in the United States District Court for the District of Columbia, Praman was convicted of the unlawful distribution of a controlled substance and received a suspended sentence of confinement of one to five years. 21 U.S.C. § 841(a).

As a result, on July 25, 1978 the District Director of the INS issued an order requiring Praman to appear before one of the judges and show cause why he should not be deported by reason of the criminal conviction. 8 U.S.C. § 1251(a)(2).[2] After a full hearing with counsel before the Immigration Judge on the show cause order, Praman was, on September 12, 1978, ordered deported and on September 12, 1978 a judgment was entered to that effect. In this proceeding Praman was also found to be "statutorily ineligible" to receive discretionary relief from deportation under § 212(c), the judge basing his determination "upon rulings of the Board of Immigration Appeals."[3]

On February 1, 1980 the Board of Immigration Appeals dismissed Praman's appeal from the decision of the Immigration Judge, it having concluded that:

Deportability has been established by clear, convincing and unequivocal evidence.

\*   \*   \*   \*   \*   \*

The record establishes and we find that the respondent does not have the requisite period of continuous lawful un-relinquished domicile in the United States. *See Matter of Newton*, Interim Decision 2733 (BIA 1979) and cases cited therein. In any event, section 212(c) does not provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. Even if the respondent were eligible, we would not grant him section 212(c) relief in view of his involvement in distributing cocaine. Accordingly, the appeal will be dismissed.

---

**2.** 8 U.S.C. § 1251(a)(2):

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\*   \*   \*   \*   \*   \*

entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or *in violation of any other law of the United States.* (Accent added.)

Before the Immigration Judge, Praman conceded that deportability was established by his conviction.

**3.** In its opinion the BIA notes: "In urging reversal of the immigration judge's denial of a waiver of deportability, counsel stated, and correctly so, 'We, of course, concede that section 212(c) relief is discretionary.' "

The Immigration Judge had earlier noted that the keystone for decision in this case was the prior "rulings of the Board of Immigration Appeals." *Infra* at 249. His thesis was reaffirmed by the BIA: it looked to the history of its own conclusions, citing in *Matter of Newton*, Interim Decision 2733 (BIA 1979).[4]

The BIA originally construed § 212(c) in *Matter of S*, 5 I & N Dec. 116 (1953). There it disallowed eligibility to an alien who had resided in the United States for more than seven consecutive years, but had spent only four of them as a permanent resident:

> In view of the plain language of section 212(c) of the Immigration and Nationality Act ... together with the review of the historical background of the legislation, we come to the conclusion that this provision of law is available only to those lawfully resident aliens who are returning to an unrelinquished domicile of 7 consecutive years subsequent to a lawful entry. In other words, we construe the section to mean that the *alien must not only have been lawfully admitted for permanent residence but must have resided in this country for 7 consecutive years subsequent to such lawful admission for permanent residence*; and that not only the admission must be lawful but that the period of residence must be lawful.

*Id.* at 118 (accent added).

The soundness of this *ratio decidendi* was confirmed by the Ninth Circuit in an almost identical factual milieu in *Castillo-Felix v. INS*, 601 F.2d 459 (1979). Its determination was that reached by the BIA in the review now before us. While recognizing the issue as difficult of resolution, the Court nevertheless decided it with its own reasoning and citation:

> We are left with an ambiguous provision with little legislative history to clari-

fy how Congress intended it to be applied. The INS, the agency charged with interpreting the immigration laws, first interpreted § 1182(c) in 1953 and *has adhered to its position for 26 years*. We stated in *Baur v. Mathews*, 578 F.2d 228, 233 (9th Cir. 1978):

> The administrative agency clothed with responsibility for implementing congressional pronouncements is generally well acquainted with the policy of the statute it administers. This is particularly true when the agency has long been involved in the construction and administration of a given statute or its predecessors. Where, as here, the agency has extensive experience, has relied on the common meaning of the relevant statute's specific language, and can point to important congressional purposes furthered by its interpretation, only a clear showing of a contrary intent by Congress will justify overruling the agency's regulations.

*See also DHL Corp. v. C.A.B.*, 584 F.2d 914, 919–20 (9th Cir. 1978); *Nazareno v. Attorney General of the United States*, 168 U.S.App.D.C. 22, 26, 512 F.2d 936, 940 (1975).

601 F.2d at 465 (accent added) (footnotes omitted).

*Castillo-Felix* acknowledges the force of the contrary view of *Lok v. INS*, 548 F.2d 37 (2d Cir. 1977) but rejects its adoption as precedent for the interpretation of § 212(c). We agree with the Ninth Circuit for it is incredible to hold that Congress would let stand the unvarying and constant reading of its enactment by the INS for over 26 years if that reading disregarded the Congressional intent. Especially is this convincing of the correctness of the Service's stand when Congress placed the Act in the care of the INS, and continues it, as the

---

**4.** *Newton* confirmed the BIA's original statutory construction:

> We decline to reconsider our decision in *Matter of Anwo* in which we set forth our rationale for refusing to recede from a statutory interpretation that has been consistently applied by the Board for some 26 years.
>
>      \*     \*     \*     \*     \*     \*

> We find that the origins of the language now in section 212(c), along with the clear legislative intent in 1952 to restrict the scope of the seventh proviso, support the conclusion that such relief was intended to be available only to aliens acquiring seven years of domicile after their entry for permanent residence.

body endowed with the expertise and experience indispensable to a fair, reasonable and exacting enforcement of the legislation, so long as the Constitutional rights of persons are not impaired.[5]

We follow the admonition so plainly written in *Udall, Secretary of the Interior v. Tallman, et al.*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964) that:

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Unemployment Comm'n v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136. See also, e. g., *Gray v. Powell*, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; *Universal Battery Co. v. United States*, 281 U.S. 580, 583, 50 S.Ct. 422, 423, 74 L.Ed. 1051.

Here as the BIA's interpretation of the statutory section is neither inconsistent nor unjustified, we uphold the Board's construction which, in its estimation, will better serve the legislative intent and purpose.

Affirmed.

HAYNSWORTH, Chief Judge, dissenting:

I respectfully dissent.

The statute[1] provides for eligibility for the exercise by the Attorney General of his discretion if the returning alien (1) is "admitted for permanent residence," and (2) is "returning to a lawful unrelinquished domicile of seven consecutive years." The statute is now consistently applied to deportation cases so that the requisites for eligibility are that an alien shall have been admitted for permanent residence and that he have a lawful unrelinquished domicile of

seven consecutive years. This petitioner clearly meets both branches of the test.

If his presence in this country had been unlawful at any time, we might be confronted with a question whether, during that time, he could have a lawful domicile. There might be some question of whether he could acquire domiciliary status at all if he was here on some temporary permit, as that issued to students. In 1970, however, he had been classified as a non-immigrant employee of a foreign government. As such, he could lawfully remain indefinitely. See *Elkins v. Moreno*, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614. There was no impediment to his establishment of an entirely lawful domicile, which he did. It had been maintained for more than seven years, though his change in status from that of an employee of a foreign embassy to an immigrant for permanent residence occurred less than seven years ago. There is no ambiguity in the application of the statute to him. Hence, in this case we are not met with the possibly troublesome problems which confronted the Second and Ninth Circuits in *Lok v. INS*, 548 F.2d 37 (2d Cir. 1977), and *Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979).

Even if we were met with those problems, I would come out as the Second Circuit did. I think Judge Kaufman, writing for a panel composed of himself, Judge Friendly and Judge Oakes, persuasively demonstrated that there is no ambiguity in the statute occasioning extreme deference to administrative interpretation. Moreover, there are no practical problems or policy considerations supporting the administrative interpretation, as the dissenting opinion of Judge Takasugi in *Castillo-Felix* demonstrates.

The Congress in 1950 considered language which would require the result reached by the majority, but the Congress did not adopt that language. The language it did adopt in 1952 seems to me inconsistent with the subsequent administrative in-

---

5. There are no Constitutional privileges at stake in this litigation.

1. 8 U.S.C.A. § 1182(c).

terpretation. I am left with the feeling that the administrative interpretation was born of the administrator's preconceived notion of what should be, rather than of an attempt fairly to construe Congressional purpose and intent.

The question before us is not whether the petitioner should be deported. The statute, as I interpret it, simply means that his case should be submitted to the Attorney General of the United States who, after considering all factors, would be free to exercise his discretion as to whether or not the petitioner should be deported.